UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                                                                              Crim. No. 5:10-cr-15-1

Floyd Artis

## REPORT AND RECOMMENDATION
(Doc. 245)

      Floyd Artis, proceeding *pro se*, has filed a Motion pursuant to 28 U.S.C. § 2255 to vacate a sentence imposed upon him on March 7, 2012 in the United States District Court for the District of Vermont.  Artis was convicted following trial by jury of one count of engaging in a conspiracy with others to knowingly and intentionally distribute heroin, a Schedule I controlled substance, and 28 grams or more of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Doc. 232.)  Artis was sentenced by Chief United States District Court Judge Christina Reiss to 150 months in prison, to be followed by a ten-year term of supervised release.

      Artis now contends that he received ineffective assistance of counsel both at the time of his sentencing and on appeal.  Artis asserts that his counsel at sentencing and appellate counsel were ineffective for failing to object to a two-level enhancement under the advisory Sentencing Guidelines for possession of a firearm during the conspiracy. Based on the foregoing, I recommend that Artis's Motion (Doc. 245) be DENIED.

## Background

**I.     Offense Conduct**

Artis was charged in a Second Superseding Indictment with one count of engaging in a conspiracy with others to distribute heroin and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and one count of possession of a Beretta pistol as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Trial of the felon-in-possession-of-a-firearm count was severed from the drug count to avoid the undue prejudice that would arise from proof of a prior felony conviction during trial of the Title 21 offenses.  The government later moved to dismiss the gun count without prejudice and that motion was granted.  (Docs. 63, 74.)  Trial commenced on February 22, 2011 and the jury returned a verdict of guilty after five days of testimony.  Artis was represented at trial by the Office of the Federal Public Defender.  The evidence adduced during the trial was later succinctly summarized by Chief Judge Reiss in an August 4, 2011 Opinion and Order denying Artis's motion for a new trial:

> On February 28, 2011, a jury convicted Defendant of conspiring to distribute heroin and more than twenty-eight grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  The charged conspiracy operated from in or about November 2008 until in or about June 2009.  At trial, both indicted and unindicted co-conspirators provided testimony, including Mandy Blanchard, James Welcome, Colleen Chapman, and Jessica Kimball.  Martika Euber and Randy Forrest also provided testimony as fact witnesses.  Each of these witnesses testified that he or she had first-hand knowledge of Defendant's narcotics dealing in Vermont.  With the exception of Mr. Forrest, these witnesses either sold drugs at the behest of Defendant or otherwise assisted him in selling drugs, or witnessed all or part of a drug deal.  In addition, the jury heard from Detective Michael Henrique of the New York City Police Department, who interviewed Defendant while he was incarcerated for an unrelated narcotics

conviction in New York. Detective Henrique testified that Defendant admitted to dealing narcotics in Vermont and New York.

(Doc. 187 at 1–2.)

With regard to the evidence involving the possession of the firearm, multiple witnesses described Artis's acquisition and possession of a handgun. Mandy Blanchard testified that she purchased a .32 caliber Beretta pistol for Artis, using money Artis had provided to her, after Artis was robbed by rival drug dealers in Rutland, Vermont. Her testimony concerning her acquisition of the firearm was corroborated by the introduction of the firearm transaction record, ATF Form 4473. (Doc. 150 at 102.) James Welcome, Artis's nephew, testified pursuant to a cooperation plea agreement and described his distribution of drugs as part of his role in the conspiracy. As to the Beretta firearm, Welcome testified that he learned from Artis that Ms. Blanchard had purchased the firearm for Artis. Welcome testified that he saw the firearm, loaded, in Artis's Brooklyn apartment. (Doc. 152 at 166–67.)

The actual firearm was admitted as an exhibit when New York City Police Officer Daniel Nicoletti identified the Beretta pistol at trial as the firearm he received from Fatima Anderson, the mother of Artis's child, the day after the June 2009 arrest of Artis at Anderson's Brooklyn apartment. (Doc. 152 at 250.) Coconspirator Colleen Chapman testified that, according to Artis, the Beretta firearm belonged to him, and that Artis had asked Ms. Blanchard to buy it for him. Martika Euber, a minor participant in the conspiracy, also said that Artis told her that he bought a firearm, and that Artis had Ms. Blanchard purchase it for him. (Doc. 167.) In addition to the direct testimony of these

cooperating witnesses, the government offered Western Union wire transfer record and cellular telephone records to corroborate their testimony.  Finally, the evidence included testimony from law enforcement officers who testified that Artis stated in a post-arrest interview that Mandy Blanchard had purchased the firearm and had left the Berretta in Artis's automobile and Artis had removed it to his apartment.

## II.    Sentencing

A presentence report ("PSR") was prepared by the Probation Office in anticipation of sentencing.  The PSR concluded that Artis faced an imprisonment range under the Sentencing Guidelines of 262–327 months.  (PSR ¶ 109.)[1]  This determination was founded on the conclusion that Artis's base offense level was 32, resulting from Artis's responsibility for the distribution of heroin and cocaine base which converted to a drug equivalency of 1,000 to 3,000 kilograms of marijuana.  Artis received a two-level enhancement for the possession of a weapon during the conspiracy, and a three-level enhancement for his leadership role in the offense.  (*Id.* ¶¶ 64–73.)  Artis's prior convictions, including his 2007 New York drug felony conviction, led to the determination that Artis was in Criminal History Category III ("CHC III").  (*Id.* ¶ 76–78.)  Under the statutory sentencing scheme for Title 21 drug offenses, Artis also faced a mandatory minimum sentence of ten years as a consequence of his prior drug felony conviction.  (*Id.* ¶ 108.)

---

[1] The PSR applied the November 1, 2011 edition of the Sentencing Guidelines Manual.  (*Id.* ¶ 63.)  Citations to the United States Sentencing Guidelines in the discussion that follows are accordingly to that edition.

Between the jury verdict and sentencing, the public defender was relieved as counsel and Attorney Mark J. Kaplan was appointed to represent Artis. Prior to sentencing, Attorney Kaplan filed an extensive sentencing memorandum (Doc. 229). In his written submission, Attorney Kaplan asserted no objections to the Sentencing Guideline determinations set forth in the PSR. Rather, he focused his arguments on a request for a downward departure based on a claim that CHC III overstated the seriousness of Artis's prior criminal history, and a request that the court impose a sentence of not more than the mandatory minimum of ten years based on the factors set forth in 18 U.S.C. § 3553(a). Kaplan argued the ten-year sentence was sufficient to protect the public and provide sufficient general and specific deterrence. Kaplan pointed out that Artis was relatively young (23), that Artis had overcome difficult upbringing, and that Artis had made some progress in turning his life around by obtaining his General Equivalency Degree (GED) while incarcerated. (Doc. 229 at 7–10.) The government opposed the requested departures or variances and sought the imposition of a sentence of 262 months consistent with the Sentencing Guidelines. (Doc. 230.)

At the sentencing hearing, Chief Judge Reiss ascertained that Artis had read and reviewed the PSR. When the judge inquired if there were any factual challenges to the contents of the PSR, Attorney Kaplan stated that his client disagreed with the jury's verdict, and that he disputed the trial testimony and "evidentiary decisions." (Doc. 235 at 2.) He stated that his client would not permit him to assert factual challenges to the PSR. (*Id*. at 3.) Later in the sentencing hearing Kaplan relented somewhat and stated: "So my client would like to put on the record that he has, he has an objection to the references to

5

the gun. I think that's an issue we can deal with on the appeal obviously." (*Id.* at 23.) In an affidavit submitted in connection with this Motion, Attorney Kaplan explains that his client had instructed him to not raise a challenge to the PSR. (Doc. 251.) As a result, the court adopted the conclusions of the PSR and concluded that the applicable Sentencing Guideline range was 262–327 months.

Attorney Kaplan asserted that a downward departure or a variance from the Sentencing Guideline range was appropriate. Attorney Kaplan, arguing for the imposition of a ten-year sentence, added to his written argument that Artis's criminal history score overstated the seriousness of his record, that Artis has taken steps to become a productive member of society, and that generally a ten-year sentence for such a youthful offender was sufficient to satisfy the goals of sentencing. (Doc. 235 at 7–10.)

Chief Judge Reiss agreed that a sentencing variance from the 262- to 327-month sentencing range was appropriate. Judge Reiss declined to depart horizontally from the sentencing range, concluding that Artis's criminal history score did not overstate the seriousness of his past criminal conduct. (*Id.* at 26.) The judge expressed that the seriousness of the offense, including the large quantity of heroin involved, Artis's prior criminal record, and Artis's use of vulnerable persons to carry out the goals of the conspiracy demanded a significant sentence. Judge Reiss observed that under 18 U.S.C. § 3553(a) the court was required to impose a sentence that was sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in § 3553, including the need for punishment, specific and general deterrence, and the kinds of sentences available. Judge Reiss took note of Artis's relative youth, his attainment of his GED while in

prison, and his lack of a prison disciplinary record. (*Id*. at 37.) Judge Reiss concluded that a sentence of 150 months, together with a ten-year term of supervised release, was sufficient but not greater than necessary to achieve an appropriate sentence. (*Id*. at 38–39.) The sentence represented a departure or variance of 112 months from the applicable Sentencing Guideline range set forth in the PSR.

## III.   Direct Appeal

Artis, through counsel, pursued a direct appeal. Represented by Attorney Robert J. Boyle, Artis challenged the sufficiency of the evidence supporting the conviction on the conspiracy count. He also contended that the district court erred in failing to order the government to disclose rough notes of a witness interview which were not signed by the witness nor contained any direct quotes from the witness. The Court of Appeals rejected Artis's claims and affirmed the conviction in a summary order. *United States v. Artis*, 523 F. App'x 98 (2d Cir. 2013).

## Analysis

## I.   Standards Governing Ineffective Assistance of Counsel

The standards governing ineffective-assistance-of-counsel claims are well established. To show that the performance of counsel deprived him of his Sixth Amendment right, petitioner bears the considerable burden of demonstrating that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This *Strickland* standard "is rigorous, and the great majority of

habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

As to the first prong of the *Strickland* analysis, an attorney's representation is objectively deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Strickland*, 466 U.S. at 688; *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)).

As to the second *Strickland* prong, counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (internal quotation marks omitted); *see Morales*, 635 F.3d at 43. "Unlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)). "If the evidence of

8

a defendant's guilt is strong, the second prong of the *Strickland* test is not easily satisfied as it is less likely that trial counsel's performance materially affected the outcome." *United States v. Delarosa*, No. 1:09-cr-64-20, 2012 WL 3778855 *5 (D. Vt. Aug. 30, 2012).

A court reviewing a claim of ineffectiveness need not address the performance prong where there has been no showing of prejudice. The Supreme Court has advised:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

## II.     Claim of Ineffectiveness at Sentencing

Artis argues that Attorney Kaplan was ineffective when he failed to object to the two-level enhancement in the Sentencing Guideline calculation for possession of a firearm pursuant to USSG § 2D1.1(b). The government responds by asserting that Kaplan's performance was constitutionally satisfactory. Alternatively, the government argues that Artis fails to show any prejudice in light of the substantial downward departure or variance Artis received.

### A.     Performance Prong

The government asserts that Kaplan rendered adequate assistance consistent with prevailing professional norms. In advancing this argument the government places great

reliance on Attorney Kaplan's statement in an affidavit that Artis would not permit him to contest the application of the firearms enhancement. (Doc. 251.) The argument is not persuasive. A client has control over only four fundamental decisions in a criminal prosecution. Those fundamental decisions are: (1) whether to plead guilty, (2) whether to waive a jury trial, (3) whether to testify, and (4) whether to pursue an appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). All other significant decisions regarding strategy and the conduct of the defense are left to the attorney after consultation with the client. I cannot agree with the proposition that a lawyer's duty to advocate zealously for his client can be short-circuited by a client's poor decisions. The government's argument is further undercut by Attorney Kaplan's somewhat confusing statement that the application of the firearm enhancement could be "deal[t] with" on appeal without advancing a challenge to its application in the district court. (Doc. 235 at 23.) Failure to raise an objection in the district court would result in an argument on appeal that the objection had been forfeited.

Of course, a lawyer need not pursue a defense or an objection if "the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *Strickland*, 466 U.S. at 690–91. Here the facts supporting the application of the firearms enhancement were compelling. But it is not known if the decision to forego the objection was truly a strategic one and one based on the strength of the evidence. All that is before the court is that the objection

was not pursued because Artis forbade that course of action.[2]  Regardless, *Strickland*'s performance prong need not be analyzed further because Artis fails to satisfy its prejudice prong.

### B.      Prejudice

Artis cannot satisfy the prejudice prong of *Strickland*.  Artis must demonstrate that if an objection had been asserted it would have been successful.  Here, Artis fails.

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement in calculating the offense level for the unlawful manufacturing, importing, exporting, trafficking, or possession of drugs "[i]f a dangerous weapon (including a firearm) was possessed."  The accompanying note explains:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons.  The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

USSG § 2D1.1 cmt. n.3.  The Second Circuit has interpreted the enhancement to require a two-step burden-shifting analysis: "[O]nce the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (i.e., the

---

[2] Artis argues that the government's dismissal of the felon-in-possession count proves that Attorney Kaplan was ineffective for not challenging the two-level firearms enhancement.  (*See* Doc. 245-1 at 14–15.)  The government insists that the dismissal of that count was not a concession that it could not prove Artis's possession of the gun for purposes of the enhancement, and that Artis has forfeited any claim to the contrary.  (*See* Doc. 252 at 14–15.)  I agree that the government's dismissal of the felon-in-possession count has little impact on the present analysis.  The government could have had other reasons for dismissing that count; and indeed, the government says it did so for reasons other than inability to prove the charge.  (*See id.* at 2–3.)  Moreover, as stated above, even if the dismissal of the count did bear on the question of the firearms enhancement, Attorney Kaplan might have had strategic reasons for foregoing an objection.

11

storage and cutting of drugs) relevant to the offense (i.e., distribution of drugs) at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." *United States v. Smith*, 215 F.3d 237, 241 (2d Cir. 2000) (per curiam) (internal citation omitted).

The enhancement also applies if the defendant possessed the firearms during conduct relevant to the offense, not just during the specific act which precipitated his arrest. *See* USSG § 1B1.3 (noting that "[u]nless otherwise specified, . . . specific offense characteristics . . . shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense").

Here, Mandy Blanchard testified at trial that she bought the gun for Artis because he needed it for "protection." (Doc. 150 at 98.) Blanchard testified that she delivered the pistol to Artis. Artis told her that while he was dealing drugs he had been assaulted and robbed by rivals. (*Id.* at 97–98.) Artis kept the loaded firearm in his possession, either in his vehicle or his Brooklyn apartment during the course of the conspiracy. Several other witnesses observed Artis with the pistol during the conspiracy. There was abundant evidence to conclude that the government met its initial burden to support application of

the enhancement.  Artis now offers no evidence to indicate that it was "clearly improbable" that the Beretta pistol weapon was connected to the drug dealing.[3]

Alternatively, even if an objection to the firearm enhancement had been successfully asserted, Artis's Sentencing Guideline calculation would have been reduced by only two levels, yielding a sentencing range of 210–262 months.  Attorney Kaplan successfully argued for a non-Guideline sentence of 150 months, a sentence far less than that called for by the advisory Sentencing Guidelines.  Artis fails to make out "a reasonable probability" that his sentence would have been any different had a successful objection to the firearm enhancement been advanced.  *Strickland*, 466 at 694.

## III.  Claim of Ineffectiveness on Appeal

To establish ineffective assistance of appellate counsel, Artis's burden is the same as with trial counsel.  Artis must show that "'counsel's representation fell below an objective standard of reasonableness,' . . . and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) (per curiam) (quoting *Strickland*, 466 U.S. at 688, 694).  The analysis with respect the application of the firearm enhancement at sentencing applies with equal force to Artis's appeal.  The

---

[3] Artis contends that Attorney Kaplan should have offered at sentencing a photograph that the court declined to admit into evidence at trial, namely, a photograph from Blanchard's Facebook page that Artis says shows "Blanchard and her friend posing with the very same firearm that she earlier testified that she purchased solely for Artis."  (*See* Doc. 245-1 at 6, 16.)  The government maintains that, by not raising the issue at trial or on appeal, Artis has forfeited any claim that the gun in the photograph was the Beretta at issue.  (*See* Doc. 252 at 15.)  I agree with the government on that point.  Moreover, even if Artis had not forfeited that issue, Artis was not prejudiced by failure to introduce the photograph at sentencing for the same reasons that the court articulated in its August 4, 2011 Opinion and Order denying Artis's motion for a new trial.  (*See* Doc. 187 at 10–11.)

firearm enhancement was clearly appropriate as it was supported by abundant evidence. Even if an objection had been advanced on appeal, and had been successful, Artis cannot show that his sentence would have been different. *See Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1998) ("Because we have held that the substance of the issues involved have no merit, appellate counsel was not ineffective, and [defendant] suffered no prejudice, from his appellate counsel's failure to raise them.").

IV.  **No Hearing is Required**

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of motions that present facially valid claims). However, § 2255 does not entitle the defendant to a hearing where his allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *See Machibroda*, 368 U.S. at 494; *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). Artis has failed to show specific facts that if proved at a hearing would warrant the granting of his Motion. Accordingly, no hearing is required.

## **Conclusion**

Based on the foregoing I recommend that Artis's Motion to Vacate the sentence pursuant to 28 U.S.C. § 2255 (Doc. 245) be DENIED.

Dated at Burlington, in the District of Vermont, this 23rd day of September, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).